UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

W6 RESTAURANT GROUP, LTD
DBA Barley House
1261-65 West 6th St.
Cleveland, OH 44113

and

1909 W25, LLC
DBA TownHall Cleveland
1909 W 25th Street
Cleveland, OH 44113

and

2125 CAFÉ, LLC
DBA Green Goat Café Bar
2125 Superior Ave, East
Cleveland, OH 44115

and

TH CBUS, LLC
DBA TownHall Columbus
792 North High Street
Columbus, OH 43215

and

100 E. CENTRAL BOULEVARD, LLC
DBA Stagger Inn
100 East Central Blvd.
Orlando, FL 32801

and

BISTECCA CORPORATION
DBA Parma Heights Harry Buffalo
6425 Pearl Road
Parma Heights, OH 44130

and

CASE NO. ______________________

JUDGE ________________________

HB CHURCH STREET, LLC :
DBA Harry Buffalo :
129 W. Church St. :
Orlando, FL 32801 :
:
and :
:
HHHB, LLC :
DBA Harry Buffalo :
5604 Wilson Mills Road :
Highland Heights, OH 44143 :
:
and :
:
JSJ KLUB, LLC :
DBA Harry Buffalo :
2120 E. 4th Street :
Cleveland, OH 44115 :
:
and :
:
MGG HOSPITALITY, LLC :
DBA Rebol :
101 W. Superior Ave. :
Cleveland, OH 44113 :
:
and :
:
STAR BAR & GRILL, INC. :
DBA Harry Buffalo Westfield :
3619 Midway Mall Unit B20 :
Elyria, OH 44035 :
:
and :
:
THE OTHER BAR, LLC :
DBA The Other Bar :
18 Wall Street Plaza :
Orlando FL 32801 :
:
and :
:
MANDRAKE COLUMBUS, LLC :
DBA TownHall Rooftop :
810 North High Street :
Columbus, OH 43215 :

and

WESTERVILLE RESTAURANT GROUP, LLC
DBA Harry Buffalo
6150 Sunbury Rd., Unit A
Columbus, OH 43081

and

SUMMER HOUSE, LLC
DBA Summer Place
12900 Lake Avenue
Lakewood, Ohio 44107

Plaintiffs,

v.

THE SMALL BUSINESS ADMINISTRATION
409 3rd St. SW
Washington, D.C. 20416

Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs 100 E. Central Boulevard, LLC dba Stagger Inn ("Stagger Inn"), 1909 W25, LLC dba Town Hall Ohio City ("Town Hall"), 2125 Cafe, LLC dba Green Goat ("Green Goat"), TH CBUS, LLC dba Town Hall Columbus ("Town Hall Columbus"), Bistecca Corporation dba Parma Hts. Harry Buffalo ("Harry Buffalo"), HB Church Street, LLC dba Harry Buffalo Orlando ("Harry Buffalo Orlando"), HHHB, LLC dba Highland Heights Harry Buffalo ("Highland Heights Harry Buffalo"), JSJ Klub, LLC dba E.4th Harry Buffalo ("E.4th Harry Buffalo"), MGG Hospitality, LLC dba Rebol Cleveland ("Rebol"), Star Bar & Grill, Inc. dba Harry Buffalo ("Star Grill"), The Other Bar, LLC ("The Other Bar"), W6 Restaurant Group, LTD, dba Barley House ("Barley House"), Mandrake Columbus, LLC dba Town Hall Rooftop ("Town Hall Rooftop"), and Westerville Restaurant Group, LLC dba Harry Buffalo ("Westerville Harry Buffalo"), and Summer House, LLC dba Summer Place ("Summer Place") (collectively, "Plaintiffs") bring this suit against Defendant the Small Business Association ("SBA"). In support of this Complaint, Plaintiffs state as follows:

## INTRODUCTION

1. This is an action brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), for declaratory, injunctive, and other appropriate relief.

2. Plaintiffs are currently engaged in litigation in another matter against the SBA, as well as its administrator and deputy associate administrator of Capital Access, arising out of the SBA's implementation of, and disbursement of awards from, the Restaurant Revitalization Fund ("RRF"). Plaintiffs are pursuing claims against the SBA arising out of, among other things, its failure to process RRF applications in the order in which they were received—contrary to

Congress's mandate—which resulted in the improper denial of, constructive denial of, or failure to process Plaintiffs' applications for RRF awards.

3. Through their counsel, Plaintiffs have sought, via FOIA, records that would identify and provide basic information about the RRF, including information about when applicants submitted applications, which applicants received RRF awards, the SBA's process for reviewing RRF applications, and the SBA's efforts to recover RRF awards that were distributed to ineligible applicants or awards that should otherwise be returned.

4. That information is essential to Plaintiffs' ability to support their claims. It is also decidedly in the public interest to understand how the SBA implemented and operated a fund that disbursed more than $2 billion of taxpayer money intended to provide much needed relief to businesses suffering the unprecedented effects of the global COVID-19 pandemic.

5. The SBA has violated FOIA by constructively denying Plaintiffs' request for this important information.

## JURISDICTION AND VENUE

6. This action arises under FOIA. This Court has subject matter jurisdiction over this action and personal jurisdiction over the SBA pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(C)(i), & (a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is appropriate in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

8. Plaintiff Barley House is located in the Cleveland Warehouse District. Barley House offers American cuisine and is a nightclub in the City of Cleveland.

9. Plaintiff Stagger Inn is an American Country Bar located in the heart of Downtown Orlando. Stagger Inn offers country music & dancing in an unfussy local watering hole with a standard range of drinks.

10. Plaintiff Green Goat is a café located in the Superior Arts District. Green Goat offers organic, 100% non-GMO coffee, juices, and health-conscious fare.

11. Plaintiff Town Hall is located in Ohio City. Town Hall offers a full-service restaurant and bar. The food offerings are locally sourced and Town Hall offers innovative bar bites and vegan options served in a contemporary setting with patio. Town Hall also offers an urban café that offers fresh juice and espresso.

12. Plaintiff Town Hall Columbus is located in the Short North. Town Hall Columbus offers health-conscious fare, homemade juices, and a full-service bar offering craft beers.

13. Plaintiff Harry Buffalo is located in Parma Heights, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

14. Plaintiff Harry Buffalo Orlando is located in downtown Orlando, Florida. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

15. Plaintiff Highland Heights Harry Buffalo is located in Highland Heights, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

16. Plaintiff E.4th Harry Buffalo is located in Cleveland's East Fourth District. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

17. Plaintiff Rebol is located in Cleveland's Public Square. Rebol's mission is to create a new standard of wellness by providing functional nutrition that improves the customer's quality of life. Rebol offers dine in and carry out food service.

18. Plaintiff Star Grill is a Harry Buffalo located in Midway Mall, Elyria, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

19. Plaintiff The Other Bar is located in Orlando, Florida. The Other Bar is a night club that offers food and other attractions such as live comedians.

20. Plaintiff Summer Place is located in Cleveland's Gold Coast. Summer Place has set a new standard for scratch-made food, fresh juices, and good vibes. Summer Place has a full-service bar and its restaurant combines creative, shareable plates with fresh, modern twists on favorite standard entrees.

21. Plaintiff Town Hall Rooftop is located in the Short North. Town Hall Rooftop offers health-conscious fare, homemade juices, and a full-service bar offering craft beers.

22. Plaintiff Westerville Harry Buffalo is located in Westerville, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

23. The United States Small Business Administration is an independent agency of the federal government. The SBA's mission is to help Americans start, build, and grow businesses.

24. The SBA is an agency within the meaning of 5 U.S.C. § 552(f)(1). The SBA has possession and control of the records requested by Plaintiffs.

## THE RESTAURANT REVITALIZATION FUND

25. The American Rescue Plan Act of 2021 ("ARPA") established the RRF to, in part, provide financial assistance to restaurants to help them pay expenses related to the COVID-19 pandemic. *See* 15 U.S.C. § 9009c.

26. Congress empowered the SBA to administer the RRF. *Id.* § 9009c(a).

27. Through the United States Treasury, Congress appropriated $28.6 billion to the SBA for the RRF; $23.6 billion of that was allocated for awarding grants under "subsection (c) in an equitable manner to eligible entities of different sizes based on annual gross receipts." *Id.* §§ 9009c(b)(2)(A), (B)(i)(II).

28. RRF grants were to be used during the statutory "covered period" so recipient entities could pay specified expenses incurred as a direct result of or during the COVID-19 pandemic. *Id.* § 9009c(c)(5).

29. The "covered period" was February 15, 2020, until December 31, 2021, or a later date determined by the SBA's not more than "not later than two years after March 11, 2021[,]" *i.e.*, March 11, 2023. *Id*. § 9009c(a)(3).

30. An eligible entity may receive an RRF award equal to its pandemic-related revenue loss, up to a maximum aggregate amount of $10 million with no more than $5 million per physical location. 15 U.S.C. § 9009c(c)(4)(A).

31. ARPA defines "eligible entity" to mean restaurants, food stands, and other establishments "in which the public or patrons assemble for the primary purpose of being served food or drink." *Id.* § 5003(a)(4)(A).

32. ARPA provides that to apply for an RRF award, an eligible entity must make "a good faith certification that (i) the uncertainty of current economic conditions makes necessary the grant request to support the ongoing operations of the eligible entity; and (ii) the eligible entity has

not applied for or received a grant under [the Shuttered Venue Operators Grant program]." *Id.* § 9009c(c)(2)(A); *accord* U.S. Small Bus. Admin., *Restaurant Revitalization Funding Program Guide* at p. 6.

33. Congress directed the SBA to award those funds to "eligible entit[ies,]" 15 U.S.C. § 9009c(a)(4), "in the order in which applications were received by the Administrator" *Id.* § 9009c(c)(1).

34. That directive was subject to one caveat:

> During the initial 21-day period in which the Administrator awards grants under this subsection, the Administrator shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women … veterans … or socially and economically disadvantaged … .

15 U.S.C. § 9009c(c)(3)(A).

35. The SBA began accepting applications on May 3, 2021. *See* SBA Press Release 21-33, U.S. Small Bus. Admin., *SBA Administrator Guzman Announces Application Opening for $28.6 Billion Restaurant Revitalization Fund,* https://www.sba.gov/article/2021/apr/27/sba-administrator-guzman-announces-application-opening-286-billion-restaurant-revitalization-fund (last visited Mar. 18, 2023).

**A. The SBA Begins Processing and Funding Priority Applications.**

36. During those first twenty-one days, Defendants accepted applications from "all eligible applicants," but only "process[ed] and fund[ed] priority group applicants." *See Restaurant Revitalization Fund,* U.S. Small Bus. Admin., https://www.sba.gov/funding-programs/loans/covid-19-relief-options/restaurant-revitalization-fund (last visited Mar. 18, 2023).

37. Just nine days into that initial twenty-one-day window, Defendants announced that "a total of $2.7 billion of relief funds have been distributed to over 21,000 restaurants since [the RRF] opened" and that it had already received "more than 147,000 applications" from applicants with priority status. Press Release 12-36, U.S. Small Bus. Admin., *Recovery for the Smallest Restaurants and Bars: Administrator Guzman Announces Latest Application Data Results for the Restaurant Revitalization Fund*, https://www.sba.gov/article/2021/may/12/recovery-smallest-restaurants-bars-administrator-guzman-announces-latest-application-data-results (last visited Mar. 18, 2023).

38. Defendants closed the application window on May 24, 2021. Press Release 21-38, U.S. Small Bus. Admin., *Last Call: Administrator Guzman Announces Final Push for Restaurant Revitalization Fund Applications* https://www.sba.gov/article/2021/may/18/last-call-administrator-guzman-announces-final-push-restaurant-revitalization-fund-applications (last visited Mar. 18, 2023).

**B. The Priority Application Provision is Deemed Unconstitutional.**

39. Fearful that Defendants would award *all* of the appropriated money within the first twenty-one days and all eligible, non-priority applicants would get nothing, restaurants sued.

40. Three days after the application window closed, the United States Court of Appeals for the Sixth Circuit struck 15 U.S.C. § 9009c(c)(3)(A) down as unconstitutional to the extent it related to race and gender. *See Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021). The United States District Court for the Northern District of Texas followed suit. *See Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2021).

41. By that time, however, SBA had already distributed a large majority of RRF funds to priority applicants, some of whom, on information and belief, submitted applications after Plaintiffs.

42. On July 2, 2021, the SBA announced that all appropriated money in the RRF had been exhausted and it closed the program. Press Release 21-55, U.S. Small Bus. Admin., *SBA Administrator Announces Closures of Restaurant Revitalization Fund Program* https://www.sba.gov/article/2021/jul/02/sba-administrator-announces-closure-restaurant-revitalization-fund-program (last accessed Mar. 18, 2023).

43. Ultimately, "[a]bout 72% of RFF awards went to traditionally disadvantaged businesses." *See* GAO–22–105442, U.S. Gov't Accountability Off., *Restaurant Revitalization Fund: Opportunities Exist to Improve Oversight*, at p. 21 (July 2022) (available at https://www.gao.gov/assets/gao-22-105442.pdf). Those businesses, however, only accounted for approximately 58% of total applications. *Id.*

**C. Defendants Find an Additional $83.4 Million to Allocate.**

44. Just days later, Defendants announced they had recovered $83.4 million in RRF funds that SBA would reallocate to applicants. *See Chef Time 1520 LLC v. Small Bus. Admin.*, No. 22-3587 (D.D.C. Dec. 1, 2022) (ECF Doc. 14-1), Declaration of Vanessa Piccioni, ¶ 16 (**Exhibit A**).

45. Because the priority period was "over"—and because the statute is partially unconstitutional—the SBA "did not take priority status into account when issuing" those "new RRF awards." *Id.* at ¶ 17.

46. Instead, awards were issued to applicants whose applications were "fully processed and approved, in the order in which their applications were submitted." *Id.*

47. Defendants approved applications out of the order in which they were received because "some applications were more complicated than others and took longer to review," meaning "earlier-filed" but more complicated applications "may not have been fully approved and paid out until after a later-filed, simpler application." *Id.* at ¶ 8.

48. But Congress mandated that Defendants "award grants to eligible entities *in the order in which applications were received* by the Administrator." 15 U.S.C. § 9009c(c)(1) (emphasis added).

49. The additional $83.4 million was awarded to the first 169 approved applicants in "line"; the SBA began distributing those funds on November 23, 2022. Piccioni Decl. at ¶ 19.

50. Plaintiffs were not any of those 169 applicants.

**D.  The GAO Identifies Various Problems with Defendants' Handling of the RRF.**

51. Separately, Defendants have no regulations, rules, or processes in place for recovering fraudulently conveyed funds or clawing back unused funds at the close of the RRF.

52. In July 2022, the U.S. Government Accountability Office ("GAO"), which under the CARES Act is responsible for monitoring federal efforts to respond to the COVID-19 pandemic, issued a report. *See* GAO–22–105442, U.S. Gov't Accountability Off., *Restaurant Revitalization Fund: Opportunities Exist to Improve Oversight* (2022) (available at https://www.gao.gov/products/gao-22-105442).

53. Because the RRF application process had both automated and manual controls to screen applicants, it allowed for discretion by the SBA that, because of "weaknesses in the design and operation of pre-award controls," led to an increased risk that SBA awarded RRF funds to "fraudulent or ineligible applicants." *Id.* at p. 42.

54. Some of that agency discretion resulted in arbitrary and capricious decision-making about not only *which* applications were reviewed, but also *when* that review occurred.

55. The GAO indicated that only 14% of RRF applicants who applied on the first day of the SBA accepting applications went unfunded. That is, the majority of applicants who applied on the first day, much less applicants who applied within minutes of the SBA accepting applications, had their applications approved and were funded.

56. The GAO also identified substantial flaws with the SBA's design and execution, or lack thereof, of pre and post award controls.[1] *See generally id.* at pp. 10–55.

57. The flaws identified by the GAO are significant as they relate to, among other things, award recipients being ineligible, the SBA failing to proactively identify and promptly respond to awards based on fraudulent and other suspicious activity. *See id.*

58. The GAO reported that the SBA does not require Fund recipients to report operating status—information that relates directly to fund recoverability.

59. Congress explicitly mandated return of RRF funds if a recipient permanently closed during the covered period before expending their entire award and there remained unused funds. 15 U.S.C. § 9009c(c)(6).

60. Moreover, to monitor that RRF grant recipients spend awards on eligible expenses, SBA developed an annual reporting form. RRF program guidance states that recipients

---

[1] The deficiencies include: (1) the SBA failing to fully leverage data from its other COVID-19 relief programs, resulted in number of fraudulent awards; (2) SBA awarded RRF funds to ineligible businesses that were not entitled to receive funding; (3) SBA failed to fully verify an applicant's reported affiliations; (4) SBA failed to assess pre-award controls; (5) SBA has limited post-award controls for identifying fraudulent and ineligible recipients; (6) SBA failed to enforce compliance with reporting requirements or collected information on recipient operating status; (7) the SBA failed to use data analytics to proactively identify fraudulent awards; (8) SBA has not fully leveraged enforcement information; and (9) SBA does not have a plan to act on or respond promptly to potential fraudulent or suspicious awards.

must submit the reports annually until they have spent their entire award, or by March 11, 2023, when the program ends (whichever comes first).

61. The deadline to submit the final use of fund reports is April 30, 2023.[2]

62. The reporting form states that is a recipient fails to meet reporting deadlines, SBA may require the return of some or all of the RRF funds.

63. SBA has no regulations, rules, or procedures in place to recover funds from either eligible entities that closed during the covered period and did not use all RRF funds or from eligible entities that received funds but fail to report on their use, meaning Defendants have no way to enforce 15 U.S.C. § 9009c(c)(6).

64. The SBA has not only failed to abide by the explicit language set forth in statute, but also failed to develop and implement regulations to recover funds that statutorily must be recovered.

**E. The OIG Instructs the SBA to review potentially fraudulent applications and recover funds that were disbursed to ineligible applicants.**

65. On July 5, 2023, the SBA Inspector General ("Inspector General") issued a report entitled *SBA's Administrative Process to Address Potentially Fraudulent Restaurant Revitalization Fund Awards* ("Fraudulent RRF Awards Report") (available at https://www.sba.gov/document/report-23-10-sbas-administrative-process-address-potentially-fraudulent-restaurant-revitalization-fund-awards).

[2] Recipients must report award use for the following categories of eligible expenses (based on ARPA): (1) payroll (including paid sick leave); (2) rent or mortgage payments; (3) utilities; (4) debt service; (5) construction of outdoor seating; (6) maintenance; (7) supplies; (8) food and beverage (including raw materials); (9) covered supplier costs; and (10) business operating expenses.

66. The Fraudulent RRF Awards Report describes circumstances that may result in the return of funds to the RRF arising out of more than 2,000 RRF applications that were flagged as having unsupported gross sales information but whose applicants received RRF grants.

67. Put succinctly, according to the Fraudulent RRF Awards Report, the SBA disbursed $278.6 million in RRF awards to 2,172 applicants with unverified gross receipts, and that sum includes $20.7 million disbursed to 110 applicants whose applications were identified as potentially fraudulent.

68. The Fraudulent RRF Awards Report reflects SBA's admission that, as of July 5, 2023, the SBA had neither fully reviewed the 2,172 applications with unverified receipts nor taken any steps to recover awards that were improperly disbursed to those applicants. Indeed, the SBA had not even prioritized review of the 110 applications that were identified as potentially fraudulent.

69. In the Fraudulent RRF Awards Report, the Inspector General reports that the SBA has agreed to undertake review of the 2,172 applications with unverified gross receipts and to take appropriate action to recover improper payments. The SBA has agreed to complete that review and recovery no later than June 30, 2024.

**F. Plaintiffs' Applications Sit in Administrative Purgatory.**

70. On May 3, 2021, the first day the application portal was open and within the first few minutes that applications were accepted, Plaintiffs applied for RRF funds through the SBA's application portal.

71. On their applications, Plaintiffs certified that they operated restaurants, provided additional information requested to demonstrate their eligibility, certified that they needed a Fund award because of their current economic uncertainty, would use the funds for statutorily

covered uses, and certified they neither had applied for nor received a Shuttered Venue Operators Grant. As with other bars and restaurants, Plaintiffs' operations suffered greatly during the COVID-19 pandemic.

72. Upon information and belief, while the SBA continued to review Plaintiffs' applications, the SBA processed applications *and* awarded RRF funds to entities that submitted applications after Plaintiffs, including applications with unverified gross receipts and indications of fraud.

73. On information and belief, Defendants left complicated applications like Plaintiffs' applications in bureaucratic limbo instead of making a decision on the application.

**G. Plaintiffs' FOIA Request and Administrative Appeal**

74. On September 16, 2022, Plaintiffs, through their counsel, submitted a FOIA request to the SBA for records related to the RRF ("September 16, 2022 Request"). That request was assigned handling number 2022-007775. A true and correct copy of the September 16, 2022 Request is attached hereto as **Exhibit B**.

75. On October 14, 2022, the SBA notified Plaintiffs' counsel via email that, "due to the COVID-19-pandemic and the need to consult, with all practicable speed, among two or more components of the Administration having a substantial interest in the determination of the request," the SBA was taking "a 10-workday extension under 13 C.F.R. § 102.5." A true and correct copy of the October 14, 2022 email is attached hereto as **Exhibit C.**

76. The SBA failed to provide any further response to Plaintiffs' September 16, 2022 Request, even after multiple requests for a status from Plaintiffs' counsel.

77. On December 9, 2022, Plaintiffs' counsel filed a FOIA appeal regarding the September 16, 2022 Request ("December 9, 2022 Appeal"). A true and correct copy of the December 9, 2022 Appeal is attached hereto as **Exhibit D.**

78. To date, the SBA has not produced any records responsive to the September 16, 2022 Request or the December 9, 2022 Appeal.

79. To date, the SBA has not informed Plaintiffs as to the scope of the records that the SBA will produce in response to the September 16, 2022 Request or the December 9, 2022 Appeal.

80. To date, the SBA has not informed Plaintiffs as to the scope of documents responsive to the September 16, 2022 Request or the December 9, 2022 Appeal that the agency will withhold pursuant to any FOIA exemption(s).

## CLAIMS FOR RELIEF

### COUNT I
### Declaratory and Injunctive Relief:
### Constructive Denial of Request for Agency Records in Violation of FOIA, 5 U.S.C. § 552

81. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

82. FOIA provides this Court with "jurisdiction to enjoin [the SBA] from withholding agency records and to order production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

83. FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify a requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

84. The records sought by Plaintiffs are agency records within the SBA's control.

85. The SBA received Plaintiffs' FOIA request on September 16, 2022.

86. Pursuant to FOIA, the SBA was required to make and communicate to the Plaintiffs a "determination" on the September 16, 2022 Request no later than October 17, 2022. 5 U.S.C. § 552(a)(6)(A)(i). Applying the 10-working day extension taken by the SBA, the agency was required to make and communication to the Plaintiffs a "determination" to the September 16, 2022 Request no later than October 31, 2022.

87. As of the date of this filing, however, the SBA has not made and communicated to any of the Plaintiffs a "determination" of the September 16, 2022 Request within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

88. There is no basis to withhold, in whole or in part, the records sought by the September 16, 2022 Request. The SBA has wrongfully withheld those records in violation of FOIA.

**COUNT II**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Administrative Appeal in Violation of FOIA, 5 U.S.C. § 552**

89. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

90. FOIA provides this Court with "jurisdiction to enjoin [the SBA] from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

91. FOIA requires that within 20 working days of receiving a FOIA appeal, an agency must notify a requester of, *inter alia*, the scope of the documents that the agency will produce

and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

92. The records sought by Plaintiffs are agency records within the SBA's control.

93. The SBA received Plaintiffs' appeal on December 9, 2022. (*See* **Exhibits D & E.**)

94. Pursuant to FOIA, the SBA was required to make and communicate to Plaintiffs a "determination" of the December 9, 2022 Appeal no later than January 10, 2023.

95. As of the date of this filing, however, the SBA has not made and communicated to any of the Plaintiffs a "determination" of the December 9, 2022 Appeal within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii).

96. There is no basis to withhold, in whole or in part, the records sought by the December 9, 2022 Appeal. The SBA has wrongfully withheld those records in violation of FOIA.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare unlawful the SBA's constructive denial of Plaintiffs' September 16, 2022 FOIA Request;

B. Declare unlawful the SBA's constructive denial of Plaintiffs' December 9, 2022 Appeal;

C. Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing the SBA to make available all records sought by the Plaintiffs, unredacted, and setting a deadline for compliance;

D. Enter an injunction, pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), directing the SBA to process the September 16, 2022 Request as soon as practicable, and setting a deadline for compliance;

E. Provide for expeditious proceedings in this action;

F. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

G. Grant such other and further relief as the Court may deem just and proper.

Dated: August 31, 2023

Respectfully submitted,

*/s/ Manju Gupta*
Manju Gupta (0076452)
Melissa Z. Kelly (0077441)
TUCKER ELLIS LLP
950 Main Avenue—Suite 1100
Cleveland, OH  44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009
Email: manju.gupta@tuckerellis.com
melissa.kelly@tuckerellis.com

David A. Campbell (0066494)
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1375 East 9th Street—Suite 2250
Cleveland, OH  44114
Telephone: 216.298.1262
Facsimile: 216.344.9421
Email: david.a.campbell@lewisbrisbois.com

Edward W. Hastie (0079438)
HASTIE LEGAL, LLC
1258 Grandview Avenue—Suite B
Columbus, OH  43212
Telephone: 614.488.2800
Email: ed@hastielegal.com

*Attorneys for Plaintiffs*